UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

NEXT GENERATION MEDIA, INC.,
        Debtor.

Bky. No. 10-40097-RJK
Chapter 11 Case

**NOTICE OF HEARING AND MOTION OF ADVANCED DUPLICATION
SERVICES, LLC FOR RELIEF FROM THE AUTOMATIC STAY**

TO:    ALL PARTIES IN INTEREST SPECIFIED UNDER LOCAL RULE 9013-3(a)

1.    The undersigned counsel for Advanced Duplication Services, LLC ("ADS")

moves this Court for the relief requested below, and gives notice of hearing.

2.    This Court will hold a hearing on this motion ("Motion") before the Hon. Robert

J. Kressel, United States Bankruptcy Court Judge, on February 25, 2010 at 2:00 p.m., or as soon

thereafter as counsel may be heard, in Courtroom No. 8-West, United States Courthouse, 300

South Fourth Street, Minneapolis, Minnesota 55415.

3.    Any response to this Motion must be filed and served not later than February 20,

2010, five days before the time set for the hearing (including Saturdays, Sundays, and holidays).

UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY

GRANT THE MOTION WITHOUT A HEARING.

4.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334, and Bankruptcy Rule 5005.  This is a core proceeding.  The petition commencing this

Chapter 11 case was filed on January 7, 2010 (the "Petition Date").  The case is now pending in

this Court.

5.    This Motion arises under 11 U.S.C. 362(d)(1) and FRBP 4001 and is filed

pursuant to Local Rules 9006-1 and 9013-1 through 9013-3.  The Court is requested to take

judicial notice of its own files and the proceedings and documents filed in the State Action (as

defined in Paragraph 7 below).

## Background

6.    On the Petition Date, Next Generation Media, Inc. (the "Debtor") filed voluntary

petitions for relief under Chapter 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Minnesota.

7.    On January 22, 2010, ADS filed a proof of claim in the above captioned Chapter

11 bankruptcy in the amount of $31,781,742.30 based on its allegations against the Debtor in a

Minnesota state court litigation filed in Hennepin County District Court and entitled *Advanced*

*Duplication Services, LLC, a Delaware limited liability company, Plaintiff v. Next Generation*

*Media, Inc., Scott Suedbeck, Dennis Henrich, and John or Jane Does*, Court File No. 27-CV-08-

12904 (the "State Action").  *See* Claim No. 4 and attachments thereto, filed in this case.

8.    On January 28, 2010, the Official Committee of Unsecured Creditors (the

"Committee") was formed and ADS was appointed by the United States Trustee to serve on the

Committee.  *See* Doc. No. 27 in this case.

## The State Action

9.    The State Action arises out of the Debtor's and co-defendants', Scott Suedbeck

and Dennis Henrich (collectively, the "Co-Defendants"), willful and malicious misappropriation

of ADS' confidential and proprietary property in the form of an electronic customer and prospect

database (the "ADS Goldmine Customer Database") in violation of the Minnesota Uniform

Trade Secret Act codified in the Minnesota state statute §§ 325C.01-08 (collectively,

"MUTSA").  *See* Amended Complaint at pp. 5-18 of the Appendix attached hereto.

2

10.     The State Action was commenced on May 27, 2008 to recover compensatory and exemplary damages, including costs and attorneys' fees sustained by ADS, and to obtain preliminary and permanent injunctive relief against the Debtor and Co-Defendants.  On June 10, 2008, ADS filed an Amended Complaint to add a claim against Scott Suedbeck, a former ADS employee and officer and founder and shareholder of the Debtor, for the breach of his fiduciary duty owed to ADS and a claim against Scott Suedbeck and Dennis Henrich, a former ADS salesperson now employed as a salesperson by the Debtor, as well as John or Jane Does, to the extent any were former ADS employees now employed by the Debtor, for their breaches of their duty of confidentiality owed to ADS.  *See id.*

11.     The Debtor and Co-Defendants opposition to ADS' request for a preliminary injunction included Scott Suedbeck's admission that he took a copy of the ADS Goldmine Customer Database with him to the Debtor.  On June 12, 2008, the Honorable Janet N. Poston of the Hennepin County District Court issued a Finding of Fact, Conclusion of Law and Order Granting Plaintiff's Motion for a Temporary Injunction (the "TRO Order") concluding that "the evidence in the record demonstrated some likelihood of success on the merits of Plaintiff's claim of misappropriation of trade secrets."  *See* TRO Order at pp. 19 and 22 of the Appendix attached hereto.  The TRO Order further prohibited the Debtor and Co-Defendants from destroying any relevant documents or records, required that they turn over all physical and electronic copies of the ADS Goldmine Customer Database to a Court appointed computer forensic firm and to allow that firm to image the Debtor's computer network and to remove all copies of the ADS Goldmine Customer Database and files containing the contents thereof from its computer network.  *See id.* at pp. 22-24.

3

12.     Thereafter, the parties to the State Action engaged in eight months of extensive

discovery that was concluded on February 16, 2009.  During that time period, the parties

exchanged over 125,000 pages of physical and electronically stored documents, took twelve

depositions, exchanged responses to expert interrogatories and expert reports and served multiple

non-party subpoenas.  In addition, Judge Poston held multiple telephone conferences to resolve

discovery issues.

13.      The factual evidence uncovered during the discovery period overwhelmingly

supports ADS' claims that the Debtor and Co-Defendants willfully and maliciously

misappropriated ADS' confidential and proprietary business information and that the Co-

Defendants breached their fiduciary duty and their duty of confidentiality.

14.     Despite the overwhelming evidence to the contrary, the Debtor and Co-

Defendants filed a summary judgment motion on February 2, 2009.  The summary judgment

motion was fully briefed and an oral argument was held before Judge Poston on March 2, 2009.

15.     Shortly thereafter, the Debtor and Co-Defendants filed a motion to compel

additional discovery in the State Action.

16.     On September 24, 2009, Judge Poston Denied the Debtor's and Co-Defendants'

motion to compel and motion for summary judgment.  In her twenty-six page written

memorandum, Judge Poston held that ADS submitted evidence that the Debtor and Co-

Defendants misappropriated ADS' trade secrets in violation of MUTSA.  *See* Judge Poston's

Order Denying Summary Judgment at pp. 40-45 of the Appendix attached hereto.  Moreover,

Judge Poston held that ADS "presented evidence that it lost profits and sales, and that [the

Debtor and Co-Defendants] have been unjustly enriched by their alleged misappropriation."  *See*

4

*id.* at pg. 45.  Finally, Judge Poston held that ADS presented evidence that the Co-Defendants breached their fiduciary duty and duty of confidentiality.  *See id.* at pp. 48-49.

17.    Thereafter, on November 2, 2009, Judge Poston entered a Trial Order setting the State Action for a "**date certain** jury trial to begin on **Monday, March 29, 2010 at 9:30 a.m.**" Judge Poston has reserved a two week block of time for the trial.  *See* Judge Poston's Trial Order at pg. 61 of the Appendix attached hereto.

18.    Pursuant to the Joint Statement of the Case filed by the parties in the State Action on March 2, 2009, the parties estimated that the State Action trial would take ten days and identified forty-six potential fact and expert witnesses that may be called to testify.  *See* Joint Statement at pg. 51 of the Appendix attached hereto.

19.    More than nineteen months into the State Action, and less than three months before the trial date, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code.  The bankruptcy filing invoked the automatic stay of the State Action against the Debtor under section 362(a) of the Bankruptcy Code.  Regardless of whether ADS is allowed to proceed against the Debtor in the State Action, however, the State Action trial will proceed on March 29, 2010, against the Co-Defendants.

## Relief Requested

20.    By this Motion, ADS requests that the Court enter an order (a form of which accompanies this Motion), pursuant to section 362(d)(1) of the Bankruptcy Code, granting ADS relief from the automatic stay to permit it to proceed against the Debtor in the State Action for the limited purpose of liquidating ADS' claim against the Debtor in the above-captioned Chapter 11 bankruptcy.

**Basis for Relief Requested**

21.     Relief from the automatic stay to proceed against the Debtor in the State Action to liquidate ADS' claim is warranted for "cause" under section 362(d)(1) of the Bankruptcy Code.

22.     As set forth in the accompanying Memorandum of Law, ADS meets the balancing-of-hardship standard common in the Eighth Circuit to lift the automatic stay for "cause" under section 362(d)(1) of the Bankruptcy Code.

23.     Indeed, each one of the factors that Eighth Circuit courts consider in balancing the hardships weigh heavily in favor of ADS, including, but not limited to judicial economy, trial readiness and ADS' likelihood of success on the merits.

24.     Accordingly, the facts set forth in this Motion and the applicable law set forth in the accompanying Memorandum of Law provide compelling support for ADS' request for relief from the automatic stay.

25.     Pursuant to Local Rule 9013-2(a), this Motion is verified and accompanied by an Appendix attached hereto, a Memorandum of Law, a Proposed Order and proof of service

WHEREFORE, the undersigned counsel for Advanced Duplication Services, LLC moves this Court for an order granting the following relief:

1.     That the Court enter an order (a form of which accompanies this Motion), pursuant to section 362(d)(1) of the Bankruptcy Code, granting ADS relief from the automatic stay to permit it to proceed against the Debtor in the State Action for the limited purpose of liquidating ADS' claim against the Debtor in the above-captioned Chapter 11 bankruptcy;

2.     Ordering that the relief from the automatic stay is effective immediately and the 14 day stay pursuant to FRBP 4001(a)(3) is waived; and

3.     Such other relief as may be just and equitable.

Dated:  February 3, 2010

Respectfully submitted,

/e/ Kurt M. Anderson
Kurt M. Anderson  # 2148
Attorneys for Advanced Duplication Services LLC
P.O. Box 2434
Minneapolis, Minnesota 55402-0434
(612) 333-3185

George Warner, Jr., Esq.  (#222719)
BERNICK, LIFSON, GREENSTEIN,
GREENE & LISZT, P.A.
Attorneys for Advanced Duplication Services, LLC
5500 Wayzata Boulevard
Suite 1200, The Colonnade
Minneapolis, MN 55416
Telephone:  (763) 546-1200

Of Counsel (*Pro hac vice* application in process):
KELLEY DRYE & WARREN LLP
Robert Steiner, Esq.
Martin Krolewski, Esq.
101 Park Avenue
New York NY 10178
(212) 808-7800

## VERIFICATION

I hereby declare under penalty of perjury that I am Executive Chairman of Advanced Duplication
Services, LLC and that I have read the foregoing motion and that the facts stated therein are true
and correct; and that the Hennepin County District Court captioned pleadings appended to this
motion are true and correct copies of the documents they purport to be.

Executed on: Sent/signed/returned 2/3/2010

Jean A. Lagotte Jr.

Logout Search Menu New Civil Search Back                    Location : All MNCIS Sites - Case Search    Help

**REGISTER OF ACTIONS**
CASE NO. 27-CV-08-12904

| | |
|---|---|
| Advanced Duplication Services LLC, a Delaware limited liability company vs Next Generation Media Inc, Scott Suedbeck, Dennis Henrich, and John or Jane Does | Case Type: **Civil Other/Misc.** <br> Date Filed: **05/27/2008** <br> Location: **- Hennepin Civil** <br> Judicial Officer: **Poston, Janet N.** |

§§§§§§§

**PARTY INFORMATION**

| | | Lead Attorneys |
|---|---|---|
| Defendant | **DOES, JANE** | |
| Defendant | **DOES, JOHN** | |
| Defendant | **Henrich, Dennis** <br> Greenfield, MN 55373 | Pro Se <br> *Retained* |
| Defendant | **Next Generation Media Inc** <br> Maple Grove, MN 55369 | Pro Se <br> *Retained* |
| Defendant | **Suedbeck, Scott** <br> Maple Grove, MN 55311 | Pro Se <br> *Retained* |
| Plaintiff | **ADVANCED DUPLICATION SERVICES LLC** | WARNER, GEORGE EDWA <br> *Retained* |

**EVENTS & ORDERS OF THE COURT**

**OTHER EVENTS AND HEARINGS**
| | |
|---|---|
| 05/27/2008 | **Summons and Complaint** |
| 05/27/2008 | **Certificate of Representation** |
| 05/27/2008 | **Motion** |
| 05/27/2008 | **Motion** |
| 05/27/2008 | **Affidavit-Other** |
| 05/27/2008 | **Affidavit-Other** |
| 05/27/2008 | **Affidavit-Other** |
| 05/27/2008 | **Affidavit-Other** |
| 05/27/2008 | **Notice of Motion and Motion** |
| 05/27/2008 | **Affidavit-Other** |
| 05/27/2008 | **Notice of Case Assignment** (Judicial Officer: Poston, Janet N. ) |
| 05/29/2008 | **Memorandum** |
| 06/02/2008 | **Motion Hearing**  (9:30 AM) (Judicial Officer Poston, Janet N.) <br> Result: Held |
| 06/02/2008 | **Taken Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 06/02/2008 | **Notice of Motion and Motion** |
| 06/02/2008 | **Memorandum** |
| 06/02/2008 | **Affidavit-Other** |
| 06/06/2008 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 06/12/2008 | **Findings of Fact, Conclusions of Law and Order** (Judicial Officer: Poston, Janet N. ) |
| 06/19/2008 | **Bond** |
| 06/24/2008 | **Answer** |
| 06/24/2008 | **Answer** |
| 06/24/2008 | **- Answer** |
| 06/27/2008 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 07/08/2008 | **Informational Statement** |
| 08/11/2008 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 08/15/2008 | **Informational Statement** |

http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1611812252                    1/29/2010

In re Next Generation Media, Inc.         Motion of Advanced Duplication Services, LLC        Appendix to Motion
Chapter 11 Bky. No. 10-40097              For Limiited Relief from the Automatic Stay         Page 1

| Date | Entry |
|---|---|
| 09/04/2008 | **Referred to Mediation** (Judicial Officer: Poston, Janet N. ) |
| 09/04/2008 | **Scheduling Order** (Judicial Officer: Poston, Janet N. ) |
| 10/10/2008 | *CANCELED*   **Hearing**  (2:00 PM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 10/15/2008 | **Motion** |
| 10/15/2008 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 11/10/2008 | *CANCELED*   **Discovery Conference**  (4:00 PM) (Judicial Officer Poston, Janet N.)<br>*Other*<br>*11/07/2008 Reset by Court to 11/10/2008* |
| 12/01/2008 | *CANCELED*   **Motion Hearing**  (9:30 AM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 01/05/2009 | **Stipulation and Order** (Judicial Officer: Poston, Janet N. ) |
| 01/09/2009 | **Hearing**  (8:30 AM) (Judicial Officer Poston, Janet N.)<br>*01/07/2009 Reset by Court to 01/09/2009*<br>Result: Held |
| 01/12/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 01/21/2009 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 01/21/2009 | **Scheduling Order** (Judicial Officer: Poston, Janet N. ) |
| 02/02/2009 | **Notice of Motion and Affidavit** |
| 02/02/2009 | **Memorandum** |
| 02/05/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 02/09/2009 | *CANCELED*   **Motion Hearing**  (1:30 PM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 02/20/2009 | **Affidavit-Other** |
| 02/20/2009 | **Affidavit-Other** (Judicial Officer: Poston, Janet N. ) |
| 02/25/2009 | **Memorandum** |
| 02/25/2009 | **Affidavit-Other** |
| 02/26/2009 | **Affidavit-Other** |
| 03/02/2009 | **Motion Summary Judgment**  (8:30 AM) (Judicial Officer Poston, Janet N.)<br>Result: Held |
| 03/02/2009 | **Affidavit-Other** |
| 03/02/2009 | **Joint Statement of the Case** |
| 03/02/2009 | **Taken Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 03/02/2009 | **Affidavit-Other** |
| 03/03/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 03/03/2009 | **Affidavit-Other** (Judicial Officer: Poston, Janet N. ) |
| 03/24/2009 | **Hearing**  (1:30 PM) (Judicial Officer Poston, Janet N.)<br>*03/25/2009 Reset by Court to 03/24/2009*<br>Result: Held |
| 03/27/2009 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |
| 03/31/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 04/06/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 04/17/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 04/24/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 05/06/2009 | *CANCELED*   **Pre-trial**  (8:30 AM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 05/06/2009 | **Notice of Motion and Motion** |
| 05/06/2009 | **Notice of Motion and Motion** |
| 05/06/2009 | **Memorandum** |
| 05/06/2009 | **Notice of Motion and Affidavit** |
| 05/06/2009 | **Memorandum** |
| 05/08/2009 | **Scheduling Conference**  (1:30 PM) (Judicial Officer Poston, Janet N.)<br>Result: Held |
| 05/11/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 05/15/2009 | **Hearing**  (1:00 PM) (Judicial Officer Poston, Janet N.)<br>Result: Held |
| 05/15/2009 | **Order for Submissions-Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 05/20/2009 | *CANCELED*   **Evidentiary Hearing**  (8:30 AM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 05/29/2009 | **Other Document** |
| 05/29/2009 | **Memorandum and Affidavit** |
| 06/01/2009 | *CANCELED*   **Jury Trial**  (12:30 PM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 06/04/2009 | **Hearing**  (1:00 PM) (Judicial Officer Poston, Janet N.)<br>*06/05/2009 Reset by Court to 06/04/2009*<br>Result: Held |
| 06/04/2009 | **Order for Submissions-Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 06/11/2009 | **Memorandum** |
| 06/11/2009 | **Affidavit-Other** |
| 06/11/2009 | **Taken Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 06/26/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 06/29/2009 | **Taken Under Advisement** (Judicial Officer: Poston, Janet N. ) |
| 06/29/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 09/24/2009 | **Order-Other** (Judicial Officer: Poston, Janet N. ) |

| | |
|---|---|
| 09/28/2009 | *CANCELED*  **Hearing**  (9:00 AM) (Judicial Officer Poston, Janet N.)<br>*Other* |
| 10/23/2009 | **Memorandum** (Judicial Officer: Poston, Janet N. ) |
| 10/27/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 10/28/2009 | **Hearing**  (4:00 PM) (Judicial Officer Poston, Janet N.)<br>Result: Held |
| 11/02/2009 | **Order for Trial** (Judicial Officer: Poston, Janet N. ) |
| 11/19/2009 | **Hearing**  (3:00 PM) (Judicial Officer Poston, Janet N.)<br>Result: Held |
| 11/19/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 11/23/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 11/23/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 12/17/2009 | **Notice of Withdrawal of Counsel** |
| 12/23/2009 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 01/11/2010 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 01/11/2010 | **Other Document** |
| 01/19/2010 | **Correspondence** (Judicial Officer: Poston, Janet N. ) |
| 01/21/2010 | **Motion and Affidavit** |
| 01/21/2010 | **Motion** |
| 01/21/2010 | **Motion** |
| 01/21/2010 | **Motion** |
| 01/21/2010 | **Motion** |
| 02/18/2010 | **Motion Hearing**  (8:00 AM) (Judicial Officer Poston, Janet N.) |
| 03/29/2010 | **Jury Trial**  (9:30 AM) (Judicial Officer Poston, Janet N.) |

**FINANCIAL INFORMATION**

http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1611812252          1/29/2010

In re Next Generation Media, Inc.        Motion of Advanced Duplication Services, LLC        Appendix to Motion
Chapter 11 Bky. No. 10-40097        For Limiited Relief from the Automatic Stay        Page 3

| | | | | |
|---|---|---|---|---|
| | Total Financial Assessment | | | 1,232.00 |
| | Total Payments and Credits | | | 1,232.00 |
| | **Balance Due as of 01/29/2010** | | | **0.00** |
| 05/27/2008 | Transaction Assessment | | | 307.00 |
| 05/27/2008 | Mail Payment | Receipt # 1227-2008-020963 | WARNER, GEORGE EDWARD, Jr. | (307.00) |
| 05/27/2008 | Transaction Assessment | | | 185.00 |
| 05/27/2008 | Mail Payment | Receipt # 1227-2008-020977 | WARNER, GEORGE EDWARD, Jr. | (185.00) |
| 08/18/2008 | Transaction Assessment | | | 25.00 |
| 08/20/2008 | Mail Payment | Receipt # 1227-2008-032813 | WARNER, GEORGE EDWARD, Jr. | (25.00) |
| 02/27/2009 | Transaction Assessment | | | 55.00 |
| 02/27/2009 | Counter Payment | Receipt # 1227-2009-07615 | WARNER, GEORGE EDWARD, Jr. | (55.00) |
| 03/03/2009 | Transaction Assessment | | | 25.00 |
| 03/04/2009 | Mail Payment | Receipt # 1227-2009-08070 | WARNER, GEORGE EDWARD, Jr. | (25.00) |
| 06/02/2009 | Transaction Assessment | | | 110.00 |
| 06/02/2009 | Counter Payment | Receipt # 1227-2009-19874 | WARNER, GEORGE EDWARD, Jr. | (110.00) |
| 01/22/2010 | Transaction Assessment | | | 125.00 |
| 01/22/2010 | Transaction Assessment | | | 100.00 |
| 01/22/2010 | Transaction Assessment | | | 100.00 |
| 01/22/2010 | Transaction Assessment | | | 100.00 |
| 01/22/2010 | Transaction Assessment | | | 100.00 |
| 01/22/2010 | Mail Payment | Receipt # 1227-2010-02365 | WARNER, GEORGE EDWARD, Jr. | (525.00) |

http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1611812252                1/29/2010

In re Next Generation Media, Inc.        Motion of Advanced Duplication Services, LLC        Appendix to Motion
Chapter 11 Bky. No. 10-40097        For Limiited Relief from the Automatic Stay        Page 4

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT OF MINNESOTA

FOURTH JUDICIAL DISTRICT

CASE TYPE: #14 – OTHER CIVIL

---

Advanced Duplication Services, LLC, a
Delaware limited liability company,

*Plaintiff,*

v.

Next Generation Media, Inc., Scott Suedbeck,
Dennis Henrich, and John or Jane Does,

*Defendants.*

Court File No. 27-CV-08-12904
The Honorable Janet N. Poston

**AMENDED COMPLAINT**

---

Plaintiff Advanced Duplication Services, LLC, ("ADS"), a Delaware limited

liability company, for its Amended Complaint against Defendants Next Generation Media, Inc.

("Next Generation"), Scott Suedbeck, Dennis Henrich, and John or Jane Does (collectively,

"Defendants"), states and alleges as follows:

## PARTIES

1.    Plaintiff Advanced Duplication Services, LLC is a Delaware limited

liability company, with its principal place of business at 2155 Niagara Lane North, Suite 120,

Plymouth, Minnesota 55447.

2.    Upon information and belief, Defendant Next Generation Media, Inc. is a

corporation organized under the laws of Minnesota with its principal place of business at 11775

95th Avenue North, Maple Grove, Minnesota 55369.

3.    Upon information and belief, Defendant Scott Suedbeck is a resident of Hennepin County, Minnesota, and is the founder and sole shareholder of Defendant Next Generation.

4.    Upon information and belief, Defendant Dennis Henrich is a resident of Hennepin County, Minnesota, and is currently a Vice President of Sales of Defendant Next Generation.

5.    Upon information and belief, Defendants John or Jane Does are current and/or former employees of Next Generation who have misappropriated confidential and proprietary information belonging to ADS as described below, whose identities and addresses are presently unknown.

## SUMMARY

6.    This action is brought to recover compensatory and exemplary damages, as well as costs and attorneys' fees sustained by Plaintiff ADS, and to obtain preliminary and permanent injunctive relief against the above-named Defendants, on account of their willful and malicious misappropriation of ADS' confidential and proprietary information and their breaches of common law duties to their former employer ADS in violation of the laws of the State of Minnesota.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over the claims asserted by reason of Minn. Stat. § 484.01.

8.    This Court has personal jurisdiction over the Defendants and this matter is properly venued in Hennepin County under Minn. Stat. § 542.09 as the Defendants have had

NY01/KROLM/1288904.4

2

sufficient minimum contacts with this forum and the cause of action has arisen in the County of Hennepin.

## STATEMENT OF FACTS

### ADS and Its Confidential and Proprietary Customer Information

9.    Plaintiff ADS is in the business of manufacturing and replicating CDs and DVDs for businesses across the United States.

10.    ADS' corporate predecessor was founded and began operations in 1989 with only 5 employees. Today, ADS has approximately 168 full-time employees, manufactures approximately 45 million CDs and DVDs annually and achieves approximately $38 million in gross sales annually.

11.    ADS' customers typically consist of companies who need data to be placed on large numbers of CDs and DVDs. ADS' customers do not belong to any common trade association and include companies in industries as diverse as medical, textbook publishing, music publishing, gaming and business to business.

12.    Due to the highly competitive nature of the CD and DVD manufacture and replication business, ADS focuses much of its time, money and effort on identifying prospective customers and developing its customer base.

13.    ADS employs various methods to identify prospective customers. Among other things, ADS attends trade shows for specific industries, advertises in a diverse variety of trade publications, utilizes direct mailings to prospective customers, utilizes internet based search engines, purchases customer listings and obtains leads by word of mouth. ADS also identifies prospective customers by cold-calling companies in various industries that are likely to utilize the services that ADS provide.

14.    Once ADS identifies a prospective customer, ADS must often engage in extensive follow-up with the prospective customers in order to identify the person with authority to make decisions about purchasing CDs and DVDs. For large corporations, it may take numerous telephone calls over a period of several months before ADS can identify the prospective customer's key decision maker.

15.    After ADS determines who at a prospective customer has authority to make decisions about purchasing CDs and DVDs, ADS must then develop a relationship with that person by making additional telephone calls, traveling to prospective customers' offices for face-to-face meetings and making sales presentations. This process can take ADS several months, or even several years, before ADS makes any sales to the customer.

16.    ADS' efforts also are costly, and as a result, ADS has a budget of hundreds of thousands of dollars per year, exclusive of salesperson salaries to develop customer relationships. In addition, because identifying and developing contacts is time consuming, ADS currently employs 17 full-time salespeople and a further 17 customer service and project managers that are also utilized in developing customer relationships.

17.    The process of developing and maintaining relationships with customers is a key aspect of ADS' business, and is a time-consuming and expensive process. To assist in its sales efforts, ADS electronically records and keeps track of information concerning each of its current and prospective customers in a database using a computer program called "Goldmine" (the "Goldmine Customer Database").

18.    In addition to the names of current and prospective customers and relevant contact information, including, but not limited to the contact information for the key decision makers, ADS' salespeople are instructed to input all of their notes concerning any contact with

4

current and prospective customers into the Goldmine Customer Database. This information

includes, among other things, notes concerning customer phone calls, face-to-face meetings and

the full text of emails. ADS' salespeople also input into the Goldmine Customer Database price

quotes given to current and prospective customers, records of sales and customers' needs and

preferences.

19.     The compilation of customer information contained in ADS' Goldmine

Customer Database has been developed by ADS over the last 19 years at a substantial investment

of time, money and effort. Much of ADS' growth and success is a result of the development and

maintenance of customer relationships based on this information.

20.     The compilation of customer information has significant value to ADS and

provides ADS with significant competitive advantage in the CD and DVD manufacture and

replication business. Moreover, this compilation of current and prospective customer

information is unique and not readily, if at all, ascertainable through public means.

21.     A competitor of ADS with access to ADS' compilation of customer data

contained in the Goldmine Customer Database, would instantly have a competitive advantage in

the marketplace that it took ADS 19 years and a substantial monetary investment to acquire and

develop. In essence, that competitor would get a "free ride" on ADS' substantial investment of

time, money and effort in acquiring and developing this information.

22.     Likewise, a competitor with access to the Goldmine Customer Database

would be able to unfairly compete with ADS by using its own information against it, by, for

example, using the pricing information in the Goldmine Customer Database to under-cut ADS

with its current and prospective customers.

23.    ADS takes substantial steps to maintain the confidentiality of the compilation of customer information stored in the Goldmine Customer Database and as such it is ADS' confidential and proprietary property.

24.    ADS distributes to its employees the current version of the ADS employee handbook. The ADS employee handbooks contain ADS' confidentiality policy requiring its employees to hold ADS' confidential and proprietary information, including, but not limited to customer information, in confidence.

25.    Additionally, ADS restricts access to the Goldmine program where the Goldmine Customer Database is located to only those employees who need access to the program as part of their job responsibilities.

26.    Not all employees with access to the Goldmine program have access to the Goldmine Customer Database. Indeed, only salespeople, senior executives, department heads for purchasing and accounting, project managers and IT personnel have access to the Goldmine Customer Database.

27.    ADS also uses two layers of password protection to protect the confidentiality of the compilation of customer information stored in the Goldmine Customer Database from unauthorized access. First, an ADS employee must enter a username and password to log onto ADS' computer network. Once logged on, an ADS employee must enter a separate password to gain access to the Goldmine program where the Goldmine Customer Database is located. The separate Goldmine program password is provided by the ADS IT department to only those employees who are authorized to access Goldmine and controls their level of access.

*The Defendants and Their Misappropriation of ADS'*
*Confidential and Proprietary Customer Information*

28.    Defendant Next Generation is a direct competitor of ADS, which

manufactures CDs and DVDs and provides replication, duplication and packaging services.

29.    Defendant Scott Suedbeck is a former employee and officer of ADS.

During his employment with ADS, Defendant Scott Suedbeck had access to ADS' confidential

and proprietary information, including, but not limited to the Goldmine Customer Database and

the information contained therein.

30.    Scott Suedbeck executed a form acknowledging receipt of the ADS

employee handbook which contained ADS' confidentiality policy requiring its employees to

hold ADS' confidential and proprietary information, including, but not limited to customer

information, in confidence.  Accordingly, Scott Suedbeck was on notice of the confidential and

proprietary nature of ADS' Goldmine Customer Database and was under a duty to maintain its

confidentiality along with ADS' other confidential and proprietary information.

31.    Defendant Dennis Henrich is a former employee of ADS.  During his

employment with ADS, Defendant Dennis Henrich had access to ADS' confidential and

proprietary information, including, but not limited to the Goldmine Customer Database and the

information contained therein.

32.    Dennis Henrich executed a form acknowledging receipt of the ADS

employee handbook which contained ADS' confidentiality policy requiring its employees to

hold ADS' confidential and proprietary information, including, but not limited to customer

information, in confidence.  Accordingly, Dennis Henrich was on notice of the confidential and

proprietary nature of ADS' Goldmine Customer Database and was under a duty to maintain its confidentiality along with ADS' other confidential and proprietary information.

33.    Upon information and belief, while still employed by ADS, Scott Suedbeck, the founder and sole-shareholder of Next Generation, made plans and took steps to start Next Generation, a competing business.

34.    Upon information and belief, Defendants, including, but not limited to Scott Suedbeck and Dennis Henrich, acquired ADS' confidential and proprietary information, including, but not limited to the Goldmine Customer Database, by improper means, specifically, by electronically copying it from ADS' computer system prior to leaving ADS, and improperly have and continue to use and disclose ADS' said information to compete with ADS without ADS' consent.

35.    Upon information and belief, Defendants, including, but not limited to Next Generation acquired ADS' confidential and proprietary information, including, but not limited to the Goldmine Customer Database, from one or more of the co-Defendants under circumstances in which they knew or had reason to know that the means of acquisition was improper, or from or through a person who owed a duty to ADS to maintain its secrecy, or under other circumstances constituting a misappropriation of such information, and improperly have and continue to use and disclose said information to compete with ADS without ADS' consent.

36.    The wrongful acts of the Defendants have caused ADS to suffer immediate, permanent and irreparable harm.

## COUNT I

### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION
### OF MINNESOTA STATUTE SECTION 325C.01 *et seq.*
### (ALL DEFENDANTS)

37.     ADS re-alleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 36 above, as though fully set forth herein.

38.     ADS' compilation of customer information stored in the Goldmine

Customer Database constitutes a trade secret under the Minnesota Uniform Trade Secrets Act,

Minn. Stat. §§ 325C-.01 – 325C.08.

39.     ADS has developed and maintained the compilation of customer

information located in the Goldmine Customer Database at a substantial investment of time,

money and effort.

40.     The compilation of customer information located in the Goldmine

Customer Database is not generally known and is not readily, if at all, ascertainable through

public sources.

41.     ADS' compilation of customer information located in the Goldmine

Customer Database derives actual and potential independent economic value from not being

generally know to, or readily ascertainable by public sources by, other persons who can obtain

economic value from its disclosure or use.

42.     ADS' compilation of customer information located in the Goldmine

Customer Database has been the subject of substantial efforts to maintain secrecy.

43.     Upon information and belief, the Defendants have misappropriated ADS'

trade secrets, including, but not limited to the Goldmine Customer Database and the information

contained therein, and are continuing to improperly use and disclose those trade secrets to compete with ADS.

44.    ADS has not consented to or authorized Defendants' use or disclosure of ADS' trade secrets.

45.    Upon information and belief, Defendants' misappropriation of ADS' trade secrets has been willful and malicious.

46.    Pursuant to the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.02, ADS seeks injunctive relief to bar Defendants from continuing to misappropriates ADS' trade secrets.  Upon information and belief, Defendants will continue to use and disclose ADS' trade secrets unless enjoined by this Court.

47.    Such violations of the Minnesota Uniform Trade Secrets Act are causing and will continue to cause ADS substantial, immediate, and irreparable harm for which ADS has no adequate remedy at law in that said violations are continuing and will continue until enjoined.

48.    Pursuant to the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.03(a), ADS seeks compensatory damages for all injuries suffered as a result of Defendants' wrongful conduct that are compensable in money damages and for the amount by which Defendants have profited and been unjustly enriched as a result of their misappropriations under.

49.    Pursuant to the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.03(b), ADS seeks exemplary damages in the amount of twice Plaintiff's compensatory damages by reason of Defendants' willful and malicious misappropriation.

50.    Pursuant to the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.04, ADS seeks the costs of this action, including reasonable attorneys' fees, by reason of Defendants' willful and malicious misappropriation.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### (DEFENDANT SCOTT SUEDBECK)

51.     ADS re-alleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 50 above, as though fully set forth herein.

52.     Defendant Scott Suedbeck owed a fiduciary duty to ADS in his capacity as

an officer of ADS to act in the best interest of ADS and to refrain from conduct that would be

adverse to ADS' best interest.

53.     Upon information and belief, Defendant Scott Suedbeck breached his

fiduciary duty to ADS by actions including, but not limited to, making plans and taking steps to

start a competing business and misappropriating ADS' confidential and proprietary information,

including, but not limited to the Goldmine Customer Database, to compete with ADS without

ADS' consent while still employed by ADS.

54.     The aforesaid actions were not in ADS' best interest and by reason of the

foregoing Defendant Scott Suedbeck's breach of his fiduciary duty has caused ADS to suffer

damages in an amount to be determined at trial.

## COUNT III

### BREACH OF THE DUTY OF CONFIDENTIALITY
### (FORMER ADS EMPLOYEE DEFENDANTS)

55.     ADS re-alleges and incorporates herein by reference each and every

allegation contained in paragraphs 1 through 54 above, as though fully set forth herein.

56.     As former employees of ADS, Defendants Scott Suedbeck, Dennis

Henrich and John or Jane Does, to the extent any were ADS employees (collectively the "Former

ADS Employee Defendants"), owe ADS a duty of confidentiality not to improperly disclose or use confidential and proprietary information obtained from ADS.

57.    Upon information and belief, the Former ADS Employee Defendants breached their duty of confidentiality by misappropriating ADS' confidential and proprietary information, including, but not limited to, the Goldmine Customer Database, and improperly have and continue to use and disclose ADS' said information to compete with ADS without ADS' consent.

58.    The Former ADS Employee Defendants' breaches of their duty of confidentiality have caused ADS to suffer damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Advanced Duplication Services, LLC respectfully requests that this Court enter judgment in its favor and against the Defendants, and enter an Order:

(a)    Restraining Defendants and any persons acting on behalf of or in concert with them, from using and disclosing ADS' misappropriated trade secrets, including, but not limited to the customer database and any information contained therein, for any purpose;

(b)    Requiring Defendants and any persons acting on behalf of or in concert with them, to return ADS' misappropriated trade secrets, including, but not limited to the customer database and any information contained therein, inclusive of all copies, duplicates

and/or extracts therefrom, in their possession, whether in written or

electronic form;

(c)    Awarding Plaintiff compensatory damages for all injuries suffered

as a result of Defendants' wrongful conduct in an amount to be

determined at trial;

(c)    Awarding Plaintiff exemplary damages in the full allowable

statutory amount;

(d)    Awarding Plaintiff reasonable attorney fees, costs, expense, and

interest incurred in this action; and

(e)    Award Plaintiff such other and further relief as the Court may

deem just and proper.

## JURY DEMAND

Plaintiff Advanced Duplication Services, LLC demands a trial by jury on all

issues so triable.

Dated: June /0, 2008

RESPECTFULLY SUBMITTED,

BERNICK, LIFSON, GREENSTEIN, GREENE
& LISZT, P.A.

By: _____
  George Warner, Jr., Esq. (ID # 222719)
  5500 Wayzata Boulevard
  Suite 1200, The Colonnade
  Minneapolis, MN 55416

KELLEY DRYE & WARREN LLP

By:_____  _____ _____

    Robert Steiner, Esq.
    KELLEY DRYE & WARREN LLP
    101 Park Avenue
    New York NY 10178

*Attorneys for Plaintiff*


## ACKNOWLEDGMENT

    The undersigned, on behalf of the Plaintiff, hereby acknowledges that sanctions may be
imposed pursuant to Minn. Stat. § 549.211.


Dated: June/⁰ , 2008

         RESPECTFULLY SUBMITTED,

         BERNICK, LIFSON, GREENSTEIN, GREENE
         & LISZT, P.A.

         By:_____
           George Warner, Jr., Esq. (ID # 222719)
           5500 Wayzata Boulevard
           Suite 1200, The Colonnade
           Minneapolis, MN 55416

         KELLEY DRYE & WARREN LLP


         By:_____  _____ _____

           Robert Steiner, Esq.
           KELLEY DRYE & WARREN LLP
           101 Park Avenue
           New York NY 10178

         Attorneys for Plaintiff

STATE OF MINNESOTA          FILED          DISTRICT COURT

COUNTY OF HENNEPIN          08 JUN 12 PH 4: 13    FOURTH JUDICIAL DISTRICT

Advanced Duplication Services, LLC,          DEPUTY          Court File No. 27CV08-12904
a Delaware limited liability company,     HENN CO. DISTRICT
         Plaintiff,          COURT ADMINISTRATOR          **FINDINGS OF FACT,**
vs.                                                                                                    **CONCLUSIONS OF LAW**
                                          **AND ORDER GRANTING**
Next Generation Media, Inc., Scott Suedbeck,          **PLAINTIFF'S MOTION FOR A**
Dennis Henrich, and John Does or Jane Does,          **TEMPORARY INJUNCTION**
         Defendants.

---

      The above-entitled matter came on before Judge Janet N. Poston on June 2, 2008, pursuant to Plaintiff's motion for a temporary injunction. Plaintiff and Defendants provided additional submissions on June 3, 2008.

      George Warner, Jr., Esq. and Robert Steiner, Esq. appeared for Plaintiff. Thomas Schroyer, Esq. and John Boyle, Esq. appeared for Defendants Next Generation Media, Inc.; Scott Suedbeck; and Dennis Henrich.

      Based upon the evidence adduced, the argument of the parties, and all of the files, records, and proceedings herein, the Court makes the following,

<strong>FINDINGS OF FACT</strong>

      1.    Plaintiff Advanced Duplication Services, LLC ("Plaintiff" or "ADS") is a Delaware limited liability company with its principal place of business at 2155 Niagara Lane North, Suite 120, Plymouth, Minnesota 55447.

      2.    Defendant Next Generation Media, Inc. ("Next Generation") is a Minnesota corporation.

      3.    Defendant Scott Suedbeck, a Hennepin County, Minnesota resident, is the founder and sole shareholder of Next Generation.

      4.    Defendant Dennis Henrich, a Hennepin County, Minnesota resident, is Next Generation's Vice President of Sales.

      5.    Plaintiff manufactures and replicates CDs and DVDs for businesses in the United States. Plaintiff's customers are usually companies in many different industries who need data placed on large numbers of CDs and DVDs.

      6.    Plaintiff states that the CD and DVD manufacture and replication business is highly

1

competitive; thus, Plaintiff focuses much time, money, and effort on identifying prospective customers and developing its existing customer base.

7.    To assist in sales efforts, Plaintiff electronically records and monitors information concerning its current and prospective customers in a database using a program called "Goldmine" ("Goldmine Customer Database").

8.    In addition to current and prospective customers' names and relevant contact information, Plaintiff's salespeople are instructed to input all of their notes concerning any contact with current and prospective customers into the Goldmine Customer Database. This information includes, among other things, notes concerning customer phone calls, face-to-face meetings, and the full text of e-mails. Plaintiff's salespeople also input into the Goldmine Customer Database price quotes given to current and prospective customers, records of sales, and customers' needs and preferences.

9.    The compilation of customer information contained in Plaintiff's Goldmine Customer Database has been developed by Plaintiff over the last nineteen (19) years. Plaintiff believes that this compilation of customer information has significant value and that it provides Plaintiff with a competitive advantage in the business.

10.    Plaintiff provided evidence that it takes substantial steps to maintain the confidentiality of the customer information stored in the Goldmine Customer Database and considers this information to be confidential and proprietary. For example, Plaintiff distributes the current version of its employee handbook to its employees, which handbook contains Plaintiff's confidentiality policy requiring its employees to hold Plaintiff's customer information in confidence. Both Suedbeck and Henrich signed a form acknowledging receipt of Plaintiff's employee handbook. Plaintiff also restricts access to the Goldmine Customer Database by making it available to only those employees who need access to it as part of their job responsibilities— salespeople, senior executives, department heads for purchasing and accounting, project managers, and IT personnel. The Goldmine Customer Database also has two layers of password protection.

11.    Plaintiff alleges that Suedbeck and Henrich, former employees of Plaintiff who had access to the Goldmine Customer Database and information contained therein during their employment, acquired the Goldmine Customer Database by electronically copying it from Plaintiff's computer system prior to leaving Plaintiff. Plaintiff alleges that Suedbeck and Henrich have continued to use and disclose information contained in the Goldmine Customer Database

2

without Plaintiff's consent.

12.    On May 27, 2008, Plaintiff filed its Complaint, which asserts claims for misappropriation of trade secrets in violation of Minnesota Statute section 325C.01 *et seq.*

13.    Also on May 27, 2008, Plaintiff filed a motion for a temporary injunction.

## CONCLUSIONS OF LAW

1.    Granting temporary relief is a matter reserved to the discretion of the trial court, which must evaluate each case on its own unique facts. *Thermorama, Inc. v. Buckwold*, 125 NW.2d 844, 845 (Minn. 1964). The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982). A trial court may grant a temporary injunction if the party seeking it establishes that no adequate remedy exists at law and that denial of the injunction will result in irreparable injury. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn. 1979).

2.    In determining whether to issue a temporary injunction, the Court must consider the following five factors: (1) the relationship of the parties before the dispute; (2) the relative harm to the parties if the injunction is granted; (3) the likelihood that one party will succeed on the merits; (4) public policy considerations; and (5) the administrative burdens in supervising and enforcing the decree. *Dahlberg Bros. v. Ford Motor Co.*, 137 N.W.2d 314, 321-22 (Minn. 1965).

3.    <u>Nature of the parties' relationship</u>

Defendants Suedbeck and Henrich are Plaintiff's former employees and, thus, have a relationship that existed before this dispute.

4.    <u>Balance of harm</u>

Plaintiff must demonstrate irreparable harm to obtain an injunction, while Defendants need only show substantial harm to bar it. *Pac. Equip. & Irrigation, Inc. v. Toro Co.*, 519 N.W.2d 911, 915 (Minn. Ct. App. 1994). Without an injunction, Plaintiff alleges that it could lose sales, ongoing business relationships with customers, and profits from its investment of time in the Goldmine Customer Database, which losses would be difficult to identify after the fact. Issuance of an injunction will not prevent Defendants from engaging in normal business operations.

5.    <u>Likelihood of Success on the Merits</u>

The Uniform Trade Secrets Act, Minnesota Statute sections 325C.01-.08, articulates and

3

clarifies much of the common law concerning trade secrets and confidential information, allowing the protection of certain types of information through an action for misappropriation. *Electro-Craft Corp. v. Controlled Motion, Inc.*, 332 N.W.2d 890, 897-98 (Minn. 1983). For information to qualify as a trade secret: (1) the information must be neither generally known nor readily ascertainable; (2) the information must derive independent economic value from secrecy; and (3) the plaintiff must make reasonable efforts to maintain secrecy. *Id.* at 899; *Widmark v. Northrup King Co.*, 530 N.W.2d 588, 592 (Minn. Ct. App. 1995). The Minnesota Supreme Court has recognized that customer lists may constitute trade secrets, depending on the facts. *See Cherne Indus., Inc.*, 278 N.W.2d at 90-91 (concluding that list of potential customers fit the definition of a trade secret). Plaintiff has presented evidence tending to show that the information contained within the Goldmine Customer Database is not generally known, as access to the database is given to only those employees who need it to perform their job responsibilities. Plaintiff has also presented evidence tending to show that the information contained in the Goldmine Customer Database also has a monetary value to Plaintiff, which has taken steps to limit access to the database by providing a double layer of password protection.

Misappropriation involves the use or acquisition by improper means of another's trade secret, without that person's express or implied consent, by an individual who knew or had reason to know that the information was "acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Minn. Stat. § 325C.01, subd. 3; *Electro-Craft*, 332 N.W.2d at 903. "Improper means" are defined to include theft, as well as the "breach of a duty to maintain secrecy." Minn. Stat. § 325C.01, subd. 2. Plaintiff alleges and has presented evidence, including the May 23, 2008 Affidavit of Tom Hinton, tending to show that Defendants Suedbeck and Henrich acquired the Goldmine Customer Database through improper means. Thus, the evidence in the record demonstrates some likelihood of success on the merits of Plaintiff's claim of misappropriation of trade secrets.

6.     <u>Public policy consideration and Administrative burden</u>

Concerns regarding public policy and administrative burden are not implicated in the present case to any great extent.

## ORDER

1.     Plaintiff's motion for a temporary injunction is granted.

2.     Defendants Next Generation Media, Inc., Scott Suedbeck, and Dennis Henrich, or

4

any persons acting on their behalf, are prohibited from destroying any documents or records in their possession, whether in written, electronic, or other form, that constitute or were copied from Plaintiff's Goldmine software and database, and any information contained therein, and Defendants are ordered to preserve any such documents or records until Paragraphs 3 through 6 are completed.

3.    The professional data collection company Computer Forensics, Inc., as promptly as can be reasonably accomplished without undue burden on Defendant Next Generation Media, Inc., shall (a) inspect and make a mirror image of Next Generation Media, Inc.'s computer network server that contains all or any portions of Plaintiff's Goldmine software and database; (b) inspect and make a mirror image of Suedbeck's and Henrich's individual business hard drives; and (c) preserve such evidence in safekeeping and not release the images or any information from the same to any party until further written agreement of the parties or order of the Court.  Computer Forensics, Inc. shall retain the information so obtained until the parties stipulate or the Court orders that it can be returned to Defendants.  Plaintiff shall pay one-half and all the Defendants combined shall pay one-half of the cost incurred for Computer Forensics, Inc.'s imaging and for any additional services it provides pursuant to this Order.

4.    Within ten (10) business days of its inspection, copying, and imaging of the computer equipment produced by Defendants, Computer Forensics, Inc. shall provide the parties with a report as to what computer equipment was produced by Defendants and the actions taken by Computer Forensics, Inc. with respect to each piece of computer equipment to mirror image the same.  Computer Forensics, Inc. shall also document the chain of custody for any copies and images drawn from Defendants' computer equipment.  This report shall be produced to counsel for both parties simultaneously.

5.    Once the mirror images are obtained, Computer Forensics, Inc. shall remove from the Next Generation Media, Inc.'s server and, if present, from the imaged hard drives of Suedbeck or Henrich, any file therein containing the Goldmine software and database, or any portions thereof.

6.    Defendants Next Generation Media, Inc., Scott Suedbeck, and Dennis Henrich, and any persons acting on their behalf shall turn over to Computer Forensics, Inc. any records or documents that constitute or were copied from Plaintiff's Goldmine software and database, including any copies, duplicates, and/or abstracts, in their possession, whether in written or electronic form.

7.    Within five (5) business days from the date of this Order, Plaintiff shall post a bond

5

in the sum of One Hundred and no/100 Dollars ($100.00).

    8.    Defendants' motion for a protective Order is denied at this time.

BY THE COURT:

Dated: _June 12, 2008_

_Janet N. Poston_
Janet N. Poston
Judge of District Court

6

Sep-25-2009  09:58am  From-                                    T-504  P.001/026  F-002

STATE OF MINNESOTA            **FILED**                  DISTRICT COURT

COUNTY OF HENNEPIN      2009 SEP 24  PM 4:59      FOURTH JUDICIAL DISTRICT

BY_____DEPUTY
HENN CO. DISTRICT
COURT ADMINISTRATOR          Court File No. 27CV08-12904

Advanced Duplication Services, LLC, a       **ORDER DENYING DEFENDANTS'**
Delaware limited liability company,         **MOTION FOR SUMMARY JUDGMENT,**
                  Plaintiff,                **DENYING DEFENDANTS' MOTION**
                                            **TO COMPEL, DENYING PLAINTIFF'S**
                                            **REQUEST FOR ATTORNEYS' FEES,**
                                            **DENYING DEFENDANTS' MOTION TO**
vs.                                         **SUPPLEMENT THE SUMMARY JUDGMENT**
                                            **RECORD, AND RESERVING DEFENDANTS'**
                                            **MOTION IN LIMINE REGARDING**
Next Generation Media, Inc.,                **PLAINTIFF'S EXPERT GOROWSKY AND**
Scott Suedbeck, Dennis Henrich,             **PLAINTIFF'S DAMAGES BETWEEN**
and John or Jane Does,                      **OCTOBER 2005 AND APRIL 2006**
                  Defendants.               **FOR THE FIRST DAY OF TRIAL**

The above-entitled matter came on for hearing before Judge Janet N. Poston on March 2, 2009 pursuant to Defendants' motion for summary judgment. On May 6, 2009, Defendants filed the following: (1) Notice of Motion and Motion in Limine to Exclude the Expert Report and Testimony of Donald A. Gorowsky and Any Evidence Related Thereto, and to Exclude Any Evidence Related to ADS' Claim for Damages for the Time Period October 2005 Through April 2006; (2) Notice of Motion and Motion to Supplement the Summary Judgment Record; and (3) Notice of Motion and Motion to Compel.

During a telephone conference call with the parties on May 8, 2009, the Court declined to consider Defendants' motion to compel, which was filed past the deadline. The Court stated that it would consider Defendants' motion in limine on the first day of trial. The Court reserved Defendants' motion to supplement the summary judgment record.

During a telephone conference call on June 4, 2009, the Court stated that it would (1) issue written Orders on Defendants' motions to compel and to supplement the summary judgment record; and (2) consider Defendants motion in limine on the first day of trial.

Numerous submissions were received by the parties up to June 29, 2009.

APPEARANCES:

Robert Steiner, Esq. and George Warner, Jr., Esq. appeared on behalf of Plaintiff. Thomas Shroyer, Esq., Kristin Heebner, Esq. and John Boyle, Esq. appeared on behalf of all Defendants.

Based upon the evidence adduced, the argument of counsel, and all of the files, records, and proceedings herein, the Court makes the following,

Post-it® Fax Note  7671  Date 9-25-09  # of pages ▸ 26
To Robert Steiner and  From Elizabeth
George Warner  Co. Judge Poston
Phone # 212-808-7800  Phone # 612-596-10537
Fax # 212-808-7897  Fax #

## ORDER

1.    Defendants' motion for summary judgment is denied.

2.    Defendants' motion to compel is denied.

3.    Plaintiff's request for attorneys' fees incurred in responding to Defendants' motion to compel is denied.

4.    Defendants' motion to supplement the summary judgment record is denied.

5.    Defendants' motion in limine is reserved for the first day of trial.

6.    The following Memorandum of Law is hereby incorporated by reference.

BY THE COURT:

Dated: _September 24, 2009_        _Janet N. Poston_

Janet N. Poston
Judge of District Court

## MEMORANDUM OF LAW

### BACKGROUND INFORMATION

#### The Parties.

Plaintiff is a Delaware limited liability company with its principal place of business in Plymouth, Minnesota.  Plaintiff manufactures, replicates, and duplicates CDs and DVDs for customers across the United States.  May 23, 2008 Aff. of Connie Comeau, Plaintiff's Vice President of Business Development, ¶¶ 3, 5.

Defendant Next Generation Media, Inc. ("NGM") is a Minnesota corporation with its principal place of business in Maple Grove, Minnesota.  NGM is in the business of software media manufacturing and is a direct competitor of Plaintiff.  Feb. 2, 2009 Aff. of Scott Suedbeck, President and CEO of NGM, ¶ 3; Comeau Aff. ¶ 6.

Scott Suedbeck ("Suedbeck") is a Hennepin County, Minnesota resident and the founder and President of NGM.  Suedbeck Aff. ¶ 1.  Suedbeck was previously employed by Plaintiff from 1994 through 2001 and again from 2003 to approximately April 11 or April 14, 2005; Suedbeck held numerous positions while employed by Plaintiff, including Project Engineer, Plant Manager, Director of Manufacturing, and, finally, Vice President of Operations.  Suedbeck Aff. ¶ 2; Suedbeck Dep. at 80 (stating that his last day with Plaintiff was April 11, 2005), attached as Ex. 6

2

Sep-25-2009  09:58am  From-                                          T-504  P.003/026  F-002

to the Feb. 2, 2009 Aff. of John P. Boyle[1], counsel for Defendants; Feb. 20, 2009 Aff. of George E.
Warner, Jr., counsel for Plaintiff, Exs. 2, 3; Feb. 20, 2009 Aff. of Jean A. Lagotte, Plaintiff's
Executive Chairman, ¶ 11 (stating that Suedbeck's last day with Plaintiff was on or about April 14,
2005).

Dennis Henrich ("Henrich") is a Hennepin County, Minnesota resident and former
salesperson for Plaintiff from 2001 to 2005. Henrich Dep. at 14, attached as Ex. 3 to Feb. 2, 2009
Boyle Aff.; Comeau Aff. ¶ 27. In November 2005, Henrich joined NGM as its Vice President of
Sales and is currently employed by NGM as a salesperson. Henrich Dep. at 16-19, attached as Ex.
3 to Feb. 2, 2009 Boyle Aff.

**Plaintiff's Efforts to Identify Prospective Customers.**

Plaintiff submitted evidence that it expends a significant amount of time, money, and effort
identifying prospective customers and developing its customer base by attending trade shows,
advertising in various trade publications, utilizing direct mailings and internet based search engines,
purchasing customer listings, and obtaining leads by word of mouth. Plaintiff also cold-calls
companies. Comeau Aff. ¶ 10.

Plaintiff submitted evidence that, once it identifies a prospective customer, it must engage
in extensive follow-up to identify the person with authority to make purchasing decisions. For large
corporations, this process is extremely difficult and may require numerous telephone calls over a
period of several months. Gary Bougie, Former President of Plaintiff and current Executive Vice
President and General Manager of NGM, Dep. at 89-91; Pamela Nyquist-Klaith, former
salesperson with Plaintiff and current NGM sales employee, Dep. at 81-82; Comeau Aff. ¶ 11.

After Plaintiff identifies the individual with authority to make purchasing decisions, it then
develops a relationship with that person by making additional telephone calls and traveling to the
prospective customer's office for in-person meetings and sales presentations. It can take Plaintiff
several months, sometimes years, to make any sales to the customer. Comeau Aff. ¶ 12. Plaintiff's
efforts are costly, and it must budget significant resources, exclusive of salesperson salaries, to
develop customer relationships. Comeau Aff. ¶ 13. Defendants submitted evidence confirming
that pursuing and developing client relationships is time-consuming and expensive. *See* Bougie

---

[1] The parties attached separate portions of deposition transcripts to their respective Affidavits. Although this
portion of Suedbeck's deposition transcript was attached to attorney Boyle's Affidavit, all future citations to
deposition excerpts, unless specifically noted, are attached as Exhibits to the Feb. 20, 2009 Affidavit of Plaintiff's
attorney Warner.

3

Sep-25-2009  09:59am  From-                                    T-504  P.004/026  F-002

Dep. at 88-91; Klaith Dep. at 80.

**Plaintiff's Goldmine Database.**

In addition to the names of current and prospective customers in a database using a computer program called "Goldmine" ("Goldmine" or "Goldmine database"). Comeau Aff. ¶ 14.

In addition to the names of current and prospective customers and relevant contact information, including the contact information for key decision makers, Plaintiff's salespeople are instructed to input all of their notes concerning any contact with current and prospective customers into Goldmine. This information includes notes concerning customer phone calls, face-to-face meetings, and the full text of e-mails. Plaintiff's salespeople also input price quotes given to current and prospective customers, sales records, and customers' needs and preferences. Comeau Aff. ¶ 15. Plaintiff believes that this compilation of customer information has significant value and gives it a competitive advantage in the CD and DVD manufacture and replication business. Comeau Aff. ¶ 17.

Plaintiff presented evidence that its sales employees utilize Goldmine frequently to perform their jobs. Bougie Dep. at 146-47; Henrich Dep. at 99-100, 103, attached as Ex. 3 to Feb. 2, 2009 Boyle Aff.; Comeau Dep. 106-07. Goldmine has been referred to as Plaintiff's sales "bible"— Comeau Dep. at 34-35—and Plaintiff's former employees, discussed further *infra*, testified that the information in Goldmine was helpful in developing business and making sales. Henrich Dep. at 102-03, attached as Ex. 3 to Feb. 2, 2009 Boyle Aff.; Klaith Dep. at 152-53; Suedbeck Dep. at 188, 190. Specifically, Henrich testified that he accessed Goldmine to refresh his memory regarding customers with which he was working, because he could not remember everything about them himself. Henrich Dep. at 100-01, 103, attached as Ex. 3 to Feb. 2, 2009 Boyle Aff. Although several of Plaintiff's former employees, discussed further *infra*, had memorized certain customers' contact information, many could not recall all of the names and telephone numbers of contact individuals. *See* Klaith Dep. at 205-10; Henrich Dep. at 58-63.

NGM collects similar information in a software program called ACT. Klaith Dep. at 89-90, 146. An NGM employee testified that she uses ACT on a regular basis to input information such as pricing, customer preferences, and notes regarding communications with clients. Klaith Dep at 16, 50-51, 90-92.

Plaintiff provided evidence that the information contained in Goldmine would still be

4

valuable even if several years old, because when a contact person has left the company, a salesperson could merely ask to speak with that individual's replacement.  Certain industries have a low turnover rate, and contact information entered years before is likely to remain accurate.  Comeau Aff. ¶ 20.  Historical sales data, ordering practices, preferences, and other customer habits do not quickly change.  Comeau Aff. ¶ 20.

**Plaintiff's Efforts to Maintain Confidentiality.**

Plaintiff believes that the compilation of information in Goldmine is unique and not readily ascertainable through public means.  Comeau Aff. ¶ 17; Bougie Dep. at 149; Klaith Dep. at 158-59.  Plaintiff asserts that it takes substantial steps to maintain the confidentiality of customer information stored in Goldmine, and, as such, believes it is confidential and proprietary.  Comeau Aff. ¶ 21.  NGM employees testified that they collect the same type of information, which is also not publicly available.  Bougie Dep. at 106; Klaith Dep. at 98-99; Suedbeck Dep. at 180-81.

Plaintiff presented evidence that the pricing information contained within Goldmine is not readily available.  Comeau testified that in her nine years with Plaintiff, customers have shared prices they receive from their competitors only six times.  Comeau Dep. at 152-53.  Bougie testified that pricing information is not publicly available for all the clients contained within ACT.  Bougie Dep. at 115.  However, Defendant also presented evidence that pricing in the industry is not secret; CD/DVD replication is a commodity, and customers expect replicators to fall within certain expected price ranges.  Bougie Dep. at 45-47, 60-61, 113, attached as Ex. 1 to Feb. 2, 2009 Boyle Aff.

Plaintiff distributes the current version of its employee handbook to its employees, which handbook contains Plaintiff's confidentiality policy requiring its employees to hold customer information in confidence.  Comeau Aff. ¶ 22; Feb. 20, 2009 Warner Aff. Ex. 5.  Suedbeck, Henrich, and other employees who left Plaintiff to work at NGM, discussed further *infra*, acknowledged receiving a copy of the employee handbook and understanding that they must abide by the policies contained therein.  Comeau Aff. ¶¶ 30, 33; Feb. 20, 2009 Warner Aff. Exs. 6-12.

Suedbeck testified that he understood that Plaintiff considered financial information, sales figures on a customer-by-customer basis, and customer lists to be confidential.  Suedbeck Dep. at 183.  Henrich and other former employees of Plaintiff who went to work for NGM, discussed *infra*, also signed ADS Policy Statements concerning Confidential Information and Trade Secrets, in which they agreed that they would not disclose or permit to be disclosed to any third party

5

Sep-25-2009  10:00am  From-                                          T-504  P.006/026  F-002

Plaintiff's confidential information and trade secrets acquired by them while they were employed
by Plaintiff. Feb. 20, 2009 Warner Aff. Exs. 13-16.

Plaintiff restricts access to Goldmine to those employees who need it to perform their job
duties—salespeople, senior executives, department heads for purchasing and accounting, project
managers and IT personnel. Comeau Aff. ¶¶ 23; Klaith Dep. at 153; Suedbeck Dep. at 188.
Defendant presented evidence that Plaintiff has released substantial information from Goldmine to
independent sales representatives, including Richard Thompson. Feb. 25, 2009 Supp. Aff. of John
P. Boyle ¶ 3. Plaintiff has presented evidence that the document it gave Thompson in 2001
contained 175 potential customers from over 7000 customers and prospective customers
contained in Goldmine. Feb. 20, 2009 Warner Aff. Ex. 44.

Plaintiff uses two layers of password protection to protect the customer information stored
in Goldmine from unauthorized access. Comeau Aff. ¶ 24. First, an employee must enter a
username and password to log onto Plaintiff's computer network. Once logged on, the employee
must enter a separate password to gain access to Goldmine. This password is provided by
Plaintiff's IT department only to those employees who are authorized to access Goldmine. Comeau
Aff. ¶ 24.

### Plaintiff's Top 200 List

To maximize sales to its existing customers, Plaintiff regularly tracks and collects
information on its top two hundred customers by sales volume. Lagotte Aff. ¶ 2. This compilation
of information is referred to as the "Top 200 List," which contains the current year-to-date sales
figures as of the month the list is distributed, along with historical sales figures for the same period
from the previous year for each of those customers. Lagotte Aff. ¶ 2; Bougie Dep. at 151-54.

Plaintiff submitted evidence that the Top 200 List, which is assembled under the direction
of Plaintiff's management team, is not publicly available and is circulated only to members of
Plaintiff's management and the salespeople responsible for the customers listed therein. Lagotte
Aff. ¶ 3; Bougie Dep. at 151-54. Once the salespeople receive the list, they review the sales figures
for their customers and notify management about updates by entering notes and comments onto the
Top 200 List spreadsheet. Lagotte Aff. ¶ 4; Bougie Dep. at 155-57. Defendant submitted evidence
that the Top 200 List is circulated via e-mail to at least two different distribution groups, including
all of Plaintiff's remote sales employees, and is not described as confidential or restricted in any
way. Feb. 2, 2009 Boyle Aff. Ex. 16.

6

Sep-25-2009  10:00am  From-                                                T-504  P.007/026  F-002

Henrich testified that the Top 200 List is valuable to Plaintiff because it is a snapshot of Plaintiff's sales figures on its largest two hundred customers. The Top 200 List demonstrates what a customer can buy on an annual basis and, if viewed on a competitor, would enable it to focus sales efforts on Plaintiff's largest customers first. Henrich Dep. at 193-94; *see also* Lagotte Aff. ¶ 5. Henrich testified that he considers customers' historical financial information confidential, as it identifies which customers are most valuable. Henrich Dep. at 35-37.

Plaintiff considers the contents of the Top 200 List to be confidential and proprietary, and offered evidence that it takes substantial measures to maintain it as such by (1) placing employees on notice that the information contained in the Top 200 List is confidential; and (2) circulating the Top 200 List only to management and the salespeople who work with the customers therein. Lagotee Aff. ¶ 6; Bougie Dep. at 153-55.

Suedbeck testified that he understood that Plaintiff's customer lists, financial information, and sales figures were confidential. Suedbeck Dep. at 183. Henrich also testified that customer lists and customer information were considered confidential by Plaintiff. Henrich Dep. at 85-86. Henrich testified that while employed with Plaintiff, he did not share the Top 200 List with any of Plaintiff's competitors, customers or prospective customers, and was not aware that Plaintiff shared its Top 200 List with anyone outside of Plaintiff's employees. Henrich Dep. at 187, 195.

Defendants presented evidence that Plaintiff publicized its customer information by: (1) giving a copy of Goldmine to independent sales representative Richard Thompson, who was never Plaintiff's employee (Thompson Dep. at 96, attached as Ex. 7 to Feb. 2, 2009 Boyle Aff.); (2) circulating the Top 200 list regularly over e-mail to at least two different distribution groups, including all of Plaintiff's remote sales employees, without describing it as confidential or placing any restriction on its use (Feb. 2, 2009 Boyle Aff. Ex. 16); and (3) publicizing customer identity information on its Internet website (Feb. 2, 2009 Boyle Aff. Ex. 51). Plaintiff provided contrary evidence that it does not list the contents of Goldmine on its website, but the names of ten customers and their testimonials. Feb. 20, 2009 Warner Aff. Ex. 45. NGM did not present evidence that it has made sales to any of the customers on Plaintiff's website.

**Suedbeck Leaves Plaintiff and Forms NGM.**

In February of 2005, while still employed as Plaintiff's Vice President, Suedbeck decided to start NGM and began e-mailing business information belonging to Plaintiff to his home e-mail account. Suedbeck Dep. at 94, 97, 102, 106, 108, 112, 117-18. Suedbeck had access to this

7

information only because he was Plaintiff's Vice President. *Lagotte Aff.* ¶ 7. Suedbeck sent the

information to his home e-mail account to use in starting his competing business. *Suedbeck Dep.* at

95-97, 99-102, 103, 106-07, 108-09, 110-13. The information that Suedbeck e-mailed to himself

included, among other things, Plaintiff's (1) Production Report; (2) Revenue Forecast; (3) Job

Pricing Model; (4) DVD replication cost information; and (5) Packaging Assembly Price Grid.

*Feb. 20, 2009 Warner Aff. Exs.* 17, 19-23. Suedbeck testified both that he either had no reason for

e-mailing the documents to his home e-mail account or that he did so because he thought they

would be helpful in starting his new business. *Suedbeck Dep.* at 96, 100-01, 103, 106-07, 109-10.

Lagotte attests that the information Suedbeck e-mailed to his home e-mail account is

valuable to someone forming a competing business. *Lagotte Aff.* ¶ 9. For example, the Revenue

Forecast and Job Pricing Model would allow an individual to draft a compelling business plan to

obtain financing. *Lagotte Aff.* ¶ 9. The Job Pricing Model could provide a competitor with unique

insight into each and every element of the actual costs incurred by Plaintiff in providing a customer

with an end-product. *Lagotte Aff.* ¶ 10.

On March 6, 2005, Suedbeck copied Goldmine in its entirety onto a CD and took it home

with him. *Suedbeck Dep.* at 59, 189-90, 198. Suedbeck admitted that he copied Goldmine because

he thought it would be valuable for his new competing business. *Suedbeck Dep.* at 190. Suedbeck

did not ask, and was not given, permission to take a copy of Goldmine. *Suedbeck Dep.* at 192.

In March 2005, Suedbeck had prepared a business plan for NGM. *Suedbeck Dep.* at 276-

79. According to the contents of the business plan, on or before March 22, 2005, Suedbeck had (1)

approached and convinced at least one of Plaintiff's employees, Greg Schoener, to join him at his

new company (*Suedbeck Dep.* at 279-81; 298-99); (2) negotiated and reached terms regarding

NGM's physical location (*Suedbeck Dep.* at 282-84); (3) identified investors for his new company

(*Suedbeck Dep.* at 271, 285); and (4) decided that he would terminate his employment with

Plaintiff sometime between March 31, 2005 and April 30, 2005 (*Suedbeck Dep.* at 284-85).

On March 28, 2005, Suedbeck's attorney filed NGM's Articles of Incorporation with the

Minnesota Department of State (*Feb. 20, 2009 Warner Aff. Ex.* 28) which issued NGM's certificate

of incorporation on April 5, 2005. *Feb. 20, 2009 Warner Aff. Ex.* 1. Suedbeck's name is not listed

on any of NGM's April 5, 2005 incorporating documents; Suedbeck's attorney and his investors are

listed as the directors and officers. *Feb. 20, 2009 Warner Aff. Ex.* 29. On or about April 11 or 14,

2005, Suedbeck resigned from Plaintiff. *Suedbeck Dep.* at 80: *Lagotte Aff.* ¶ 11.

8

Plaintiff learned of Suedbeck's involvement with NGM and reminded him via letter through its counsel dated August 4, 2005 of his obligation not to use Plaintiff's confidential and proprietary information at NGM. Feb. 20, 2009 Warner Aff. Ex. 32. Plaintiff's August 4, 2005 letter to Suedbeck requested that Suedbeck return any proprietary information or trade secrets belonging to Plaintiff, stating:

> You may not appropriate or use for your own benefit or for the benefit of Next Generation or any other entity, any ADS proprietary information or trade secrets. If you have in your possession any proprietary reports, drawings, information or other written or electronic proprietary material and physical property of ADS, we hereby demand that you promptly return such documents or property to ADS.

Feb. 20, 2009 Warner Aff. Ex. 32. The August 4, 2005 letter defined trade secrets as: "customer and vendor lists, contracts, habits and plans, personnel data, marketing, purchasing and supply data and information; and various studies and reports including monthly financial and operational reports and the study prepared by Operations/Associates entitled 'Order Fulfillment Center-Conceptual Design Report'." *Id.* Suedbeck responded via letter dated August 17, 2005 that he did not "possess any proprietary or confidential information of Advanced Duplication Services, LLC." Feb. 20, 2009 Warner Aff. Ex. 33.

### Use of Plaintiff's Information at NGM.

Between 2005 and 2007, some of Plaintiff's sales employees left to work for NGM. These employees include Pam Klaith, Dennis Henrich, Julia Harrison, LaRae Spencer, Gary Bougie, Terri Momsen, Tricia Lorntson, and Richard Thompson. Defendants submit evidence that these sales employees had customer relationships that eventually led to sales for NGM. *See generally* Jan. 22, 2009 Aff. of Chuck Barrett (regarding sales representative Pam Klaith); Jan. 26, 2009 Aff. of Chris Becker (regarding Plaintiff's former independent sales representative Richard Thompson); Jan. 30, 2009 Aff. of Liz Berlin (regarding sales representatives Pam Klaith and Dennis Henrich); Jan. 14, 2009 Aff. of Patrick Fitzpatrick (regarding sales representative LaRae Spencer); Jan. 27, 2009 Aff. of Vickie Kroshus (regarding Plaintiff's former independent sales representative Richard Thompson); Jan. 22, 2009 Aff. of Darla Nemec (regarding sales representative Julia Harrison); Jan. 22, 2009 Aff. of Brian Pomon (regarding Plaintiff's former independent sales representative Richard Thompson); and Jan. 26, 2009 Aff. of Max Woelm (regarding Plaintiff's former independent sales representative Richard Thompson).

9

Sep-25-2009  10:02am  From-                                    T-504  P.010/026  F-002

Plaintiff submitted evidence that it retained several customers whose sales representatives left to work for NGM. Similarly, several customers went from Plaintiff to NGM, even though the longstanding salesperson was still at Plaintiff at the time the sales by NGM were made. Henrich Dep. at 242-43, 244-45; Feb. 20, 2009 Warner Aff. Ex. 42 at NGM 213327, Ex. 43 at NGM 001924-25, and Ex. 47 at NGM 001819. Although Patrick Fitzpatrick testified that he transferred his business to NGM specifically because of his relationship with sales representative LaRae Spencer, Plaintiff introduced evidence that Fitzpatrick transferred his business before Spencer joined NGM. Feb. 20, 2009 Warner Aff. Ex. 43 at NGM001925, 46, 47, 48, 49, and 50. Plaintiff presented evidence that the customer relationship with a salesperson is one of multiple factors in doing business in the industry, and customers develop loyalty first with a company and then an individual. Michael Hardwich, Plaintiff's CEO, Dep. at 122-23, 142; Comeau Dep. at 95-96.

On August 25, 2005, Suedbeck asked Klaith to "check out" a customer named DVB Media. Feb. 20, 2009 Warner Aff. Ex. 34. On August 30, 2005, Klaith responded by stating, "It's a LaRae prospect. She hasn't quoted anything in Goldmine since the spring of '04." *Id.* In her deposition, Klaith stated that she would have no independent source for that information other than Goldmine, which had a notation in it that DVB Media was a LaRae Spencer prospect and was last contacted in April 2004. Klaith Dep. at 253-62.

On or about September 8, 2005, NGM paid an IT consultant to export the contents of Goldmine into NGM's customer database, ACT. Feb. 20, 2009 Warner Aff. Ex. 35; Suedbeck Dep. at 198. Although Defendants state that technical limitations prevented the entire contents of Goldmine from being exported into a file entitled "Prior Contacts," and that notes relating to history, preferences, pricing, and correspondence could not be transferred into the ACT file— Suedbeck Dep. at 198; Henrich Dep. at 135—at least one former NGM employee testified that he had access to the entire database while employed by NGM. May 23, 2008 Aff. of Tom Hinton ¶¶ 12, 16. Another current NGM employee testified that she had access to Plaintiff's information that was not transferred to Prior Contacts. Klaith Dep. at 253-62. In addition to the data loaded onto NGM's server, Suedbeck retained the entire copy of Goldmine until October 13, 2008, in spite of his August 17, 2005 letter to Plaintiff wherein he stated that he did not possess any confidential or proprietary information. Feb. 20, 2009 Warner Aff. Ex. 36.

Suedbeck testified that he accessed information in the Prior Contacts file to retrieve