UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                      Chapter 7

Next Generation Media, Inc.,                                ORDER

                      Debtor.                       BKY 10-40097

_____

At Minneapolis, Minnesota, January 28, 2015.

       This case came on for hearing on December 11, 2014 on an application for compensation and reimbursement of expenses by Larkin Hoffman Daly & Lindgren, Ltd. The trustee and the United States Trustee object to the application. Patrick B. Hennessy appeared on behalf of Dwight R.J. Lindquist, the trustee; Michael R. Fadlovich appeared on behalf of the United States Trustee; Kenneth Corey-Edstrom appeared on behalf of Larkin Hoffman Daly & Lindgren, Ltd. The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

BACKGROUND

       On January 7, 2010, Next Generation Media, Inc. filed a petition under chapter 11. After the case was commenced, Larkin filed an application to approve its employment as the debtor's attorneys pursuant to 11 U.S.C § 327(a). On February 2, 2010, I entered an order approving the employment and authorizing the debtor to pay monthly invoices in accordance with the procedures of our district's Instructions for Filing a Chapter 11 Case. Specifically, I ordered that payment could be made pursuant to Instruction No. 9, which provides, "….all professionals whose retention has been approved may be allowed to submit regular monthly bills to the Debtor and the Debtor may be authorized to pay up to 80% of such fees and 100% of costs, pending court approval of the fees." The United States Trustee recommended the employment and did not object to the payment arrangement. Larkin and the debtor utilized this procedure.

       At the onset of the case Larkin negotiated a cash collateral agreement with the largest secured creditor, PrinSource Business Credit, LLC. Shortly thereafter, the debtor defaulted on the agreement and PrinSource immediately made a motion to deny further use of cash collateral

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 01/28/2015
Lori Vosejpka, Clerk, by LH

and to lift the automatic stay. On February 23, 2010, I entered an order granting PrinSource's motion. In hopes of salvaging the debtor's business Larkin brought a subsequent motion for use of cash collateral. The motion was ultimately withdrawn and, on March 9, 2010, the case voluntarily converted to one under chapter 7.

The fees and costs incurred by Larkin in rendering pre-conversion legal services totaled $166,445.37[1]. Prior to filing the case, the debtor provided Larkin with a retainer of $25,000. Pursuant to the February 2 order and Instruction No. 9, Larkin collected $22,377.59 in earned fees and $2,622.41 in costs and exhausted the retainer. On July 27, 2010, Larkin filed a "request for payment of pre-conversion and post-conversion administrative expenses." A hearing was never held as it was necessary that the claim be administered in the chapter 7 estate, pursuant to Local Rule of Bankruptcy Procedure 2016-1(a).

Upon completion of the chapter 7 liquidation, the trustee determined that the estate was administratively insolvent at the chapter 11 level. Pursuant to 11 U.S.C. § 704(a)(9), "the trustee shall make a final report and file account of the administration of the estate with the court and with the United States trustee." The final report still has not been filed with the court. Apparently, it was submitted to the United States Trustee and he was unsatisfied. He "raised with [Larkin] the problem of its receipt of a disproportionately high recovery on its chapter 11 administrative expense claim" on account of the $25,000 retainer.

Larkin has now filed this request for approval of its fees and costs. Although he had not previously objected, the trustee now objects to Larkin's application at the urging of the United States Trustee. The trustee does not object to the merit or amount of fees and costs which Larkin seeks to be allowed. Instead, he argues that Larkin should be required to "disgorge" the $25,000 retainer because the bankruptcy estate is administratively insolvent at the chapter 11 level. Accordingly, if the retainer is not returned the other creditors will receive a reduced distribution relative to what they are legally entitled.

---

[1] From January 4, 2010 through July 17, 2010 Larkin rendered legal services to the debtor. Larkin concedes that it is not entitled to fees for services provided after the date of conversion. The Supreme Court has held that after a debtor's status as debtor-in-possession is terminated, the debtor's attorney's status under § 327 is also terminated. Once terminated, the Bankruptcy Code does not allow subsequent services rendered by the attorney to be compensated from the estate. *Lamie v. United States Trustee*, 540 U.S. 526, 539 (2004).

The United States Trustee also objects to the application but on slightly different grounds. He argues that Larkin is required to "turnover" the retainer because it is property of the estate and it should be distributed pro-rata pursuant to 11 U.S.C. § 726. Additionally, he objects to the merits of a portion of the application and argues that the fees are not reasonable, necessary or appropriate.

While both the United States Trustee and the trustee argue that the retainer should be returned, neither has filed a motion or initiated an adversary proceeding required for such relief. Consequently, this proceeding is only on Larkin's application for compensation.

DISCUSSION

*Application for Compensation*

Approval of employment of an attorney under 11 U.S.C. § 327 does not constitute a right to be paid from the estate. *Ferrara v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3d Cir. 1997). Indeed, to be eligible for compensation an attorney's employment must be approved, however, compensation is governed by 11 U.S.C. § 330, as follows:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing….the court may award to a….professional person employed under section 327 or 1103 -
>     (A) reasonable compensation for actual, necessary services rendered by the….attorney…; and
>     (B) reimbursement for actual, necessary expenses.
>
> (3) In determining the amount of reasonable compensation to be awarded to a…. professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
>     (A) the time spent on such services;
>     (B) the rates charged for such services;
>     (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>     (D) whether the services performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

>(E) with respect to a professional person, whether the person is
>board certified or otherwise has demonstrated skill and experience
>in the bankruptcy field; and
>(F) whether the compensation is reasonable based on the
>customary compensation charged by comparably skilled
>practitioners in cases other than cases under this title.

Courts in the Eighth Circuit have consistently articulated the "lodestar method" as the correct approach for determining whether compensation is reasonable. "The lodestar amount is calculated by multiplying the reasonable hourly rate by the reasonable number of hours required." *Bachman v. Laughlin (In re McKeeman)*, 236 B.R. 667, 671 (B.A.P. 8th Cir. 1999); *see also P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d 728 (8th Cir. 1992); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "The bankruptcy court must make a finding as to whether the number of hours billed were reasonable in light of the complexity of the case, and then multiply that by a reasonable hourly rate for those services." *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 737 (B.A.P. 8th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The calculated lodestar amount is presumed to be reasonable although adjustments, such as enhancements for superior attorney performance, may be made in rare and exceptional circumstances. *Id.* at 738; *see also Perdue v. Kenny A.*, 559 U.S. 542 (2010).

Larkin has filed detailed documentation providing the hours and rates for the attorneys and staff who worked on the case. Eleven attorneys billed for a total of 489.65 hours. The average rate charged by the attorneys was $301.43. The highest hourly rate billed was $375.00 and the lowest hourly rate, charged by three attorneys, was $210.00. Eight staff members also worked on the case for a total of 148.40 hours with an average hourly rate of $167.20. Overall, Larkin spent 638.05 hours on the case at an average hourly rate of $270.21. The fees totaled $172,595.75[2].

The United States Trustee objects to the fees as unreasonable, unnecessary and inappropriate. Specifically, the United States Trustee objects to (1) the excessive amount of

---

[2] Fees for post-conversion work totaled $12,020.25 and are included in the $172,408.25 total. While Larkin did not separately break out the hours spent and the rates charged for post-conversion work, this does not change the substance of my analysis. Ultimately, Larkin concedes that it is not entitled to fees for post-conversion work and is requesting approval of fees of $160,575.50.

4

lawyers and staff utilized to work on the case, (2) fees of $4,234 for bringing a second motion to use cash collateral, and (3) all fees for work done after PrinSource's motion to lift the automatic stay was granted. The United States Trustee's objections are based solely on the fact that "the debtor had no cash for operations and no ability to reorganize." Aside from this statement, the United States Trustee does not provide any evidence to support his objection.

First, the United States Trustee's argument that an excessive number of attorneys and staff worked on the case is disingenuous. While it is technically correct that eleven attorneys worked on the case, of the 489.65 attorney hours billed, two attorneys *alone* amassed 348.70 hours. In fact, five attorneys each billed less than 4.4 hours. Likewise, of the eight staff members that worked on it, one staff member billed 103.70 of the 148.40 total hours spent. The United States Trustee's unsubstantiated argument has not convinced me that the hours spent and the rates charged are not commensurate with fees charged in similar bankruptcy cases.

Second, the argument that the fees were unnecessary and unreasonable is merely a statement made in hindsight. At the time Larkin was faced with making a decision on whether to bring a subsequent motion for use of cash collateral, it had recently been successful in negotiating a cash collateral agreement with PrinSource. The United States Trustee overlooks the fact that while attorneys advise their clients and carry out their decisions, ultimately it is the client's decision as to how to proceed. It was not unreasonable for the debtor to have believed that there was a possibility of another successful negotiation. After PrinSource's motion to lift the automatic stay the debtor voluntarily converted the case within two weeks. I will not disallow fees for a prudent two-week effort to prevent conversion.

After carefully reviewing Larkin's application for compensation, including the application, responses and affidavits, I find that the fees and costs are necessary and reasonable. They are approved in the amount of $166,445.37.

*Disgorgement/Turnover*

The United States Trustee requests that Larkin "turnover" its $25,000 retainer. The trustee requests that Larkin "disgorge" the same. The United States Trustee and the trustee

5

reason that the estate is administratively insolvent at the chapter 11 level, therefore, the retainer should be distributed pro-rata to all chapter 11 administrative expense claimants.

I addressed this very issue in *In re Hyman Freightways, Inc.*, 342 B.R. 575 (Bankr. D. Minn. 2006), *aff'd*, 2006 WL 3757972, No. 06-2607 (D. Minn. 2006). In *Hyman*, the United States Trustee and the trustee brought a motion, purportedly under 11 U.S.C. § 726(a), seeking a refund of attorney's fees from Fredrikson & Byron, P.A. Fredrikson had drawn upon and exhausted its $83,312.05 retainer after an interim order was issued allowing its fees. In *Hyman*, like here, the case had been converted and the estate was administratively insolvent at the chapter 11 level. The United States Trustee and the trustee argued that if Fredrikson did not return its retainer it would unfairly receive more than its entitled pro-rata distribution.

In *Hyman*, I denied the motion to refund the fees. The district court affirmed that decision and summarized my findings as follows:

> The court began its substantive discussion by observing that § 726(b) mandates only pro rata distribution of a bankruptcy estate; it contains no provision for adding property back into the estate. The court then looked to 11 U.S.C. § 541 but similarly found no provision to recover administrative fees that had already been paid. Next, the court reasoned that because 11 U.S.C. § 549 explicitly provides for recovery of postpetition transfers in some instances, § 549's silence on the issue at hand meant that Congress did not intend for trustees to recover postpetition payments that were earlier authorized by a court or by the Bankruptcy Code itself. The court opined that the trustee's argument, carried to its logical ultimate conclusion, would require the trustee to recover every payment made during the Chapter 11 case and redistribute the money, thereby unwinding the Chapter 11 process. Finally, the court acknowledged that some circumstances could warrant applying equitable principles and ordering a refund of compensation, but the court found that the equities here weighed against a refund.

*Hyman*, 2006 WL 3757972 at *1.

I acknowledge that now, like at the time of *Hyman*, there are some cases requiring disgorgement of attorney's fees when a converted case is administratively insolvent. *See e.g., Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir. 2004). Many of these cases reason that the mandatory distribution scheme of § 726 requires disgorgement. However, when read carefully, these cases do not provide any statutory analysis. Section 726 deals solely with

6

distributing property of the estate, it does not empower the trustee with the authority to collect property.

The United States Trustee argues, in essence, that it is immaterial that § 726 does not provide for collection because Larkin's retainer is property of the estate by virtue simply because the fees have not yet been allowed. If the retainer is property of the estate then it must be turned over to the trustee for distribution pursuant to § 726. This is the logic that the United States Trustee uses to distinguish this case from *Hyman*. He argues that an importance difference in *Hyman* is that an order was entered approving Fredrikson's fees. Here, payment was not made pursuant to any order, statute, or promulgated rule. According to the United States Trustee, until an order is entered approving the fees they are property of the estate. Somehow, the original order approving employment and allowing Larkin to get paid each month does not count.

The United States Trustee relies on *In re Brick Hearth Pizza*, 302 B.R. 877 (Bankr. D. Minn. 2003) as support for his position. In *Brick Hearth*, the case was similarly converted from chapter 11 to one under chapter 7 and it was administratively insolvent. The debtor's attorneys had been provided a retainer but they had not yet drawn upon it. Therefore, the court required the attorneys to disgorge the retainer because it was property of the estate. Section 541(a)(1) states that property of the estate consists of all of the debtor's legal and equitable property interests that existed as of the time the bankruptcy petition is filed. The Eighth Circuit B.A.P. has held that an unearned portion of a retainer paid to an attorney prepetition is property of the bankruptcy estate. *Fiegen Law Firm v. Fokkena* (*In re On-Line Services Ltd.*), 324 B.R. 342, 345 (B.A.P. 8th Cir. 2005). The debtor has an interest in funds in an attorney's trust account which, as of the petition date, have *not yet* been applied to pay for services already rendered. *Id.* The court in *Jackson Walker, LLP v. Federal Deposit Insurance Corp.*, 13 F.Supp.3d 953 (D. Minn. 2014) similarly held that a legal retainer remains the property of the client until counsel actually draws on the retainer.

Unlike in *Brick Hearth*, Larkin has already drawn upon and exhausted the retainer. As such, there is no unearned portion of the retainer to be included in the estate. A transfer of property rights occurred after Larkin rendered services and when they drew upon the retainer.

7

The very moment Larkin drew upon the retainer the funds were no longer property of the estate. The United States Trustee bottoms his entire argument on the proposition that somehow the amount that Larkin has received from its retainer is still property of the estate until its fees have been allowed.  First, there is really no authority for such a statement, which is inherently illogical.  Once the money was paid to Larkin, it was Larkin's money.  Second, the fees are being allowed now, which should satisfy the United States Trustee, but somehow does not.  Third, it is inconsistent with provisions of the Bankruptcy Code.  Section 549 provides for the avoidance of *unauthorized* post-petition transfers.  Section 550 provides for their recovery.  Section 541(a)(3) provides that such property becomes property of the estate *after* it is recovered.  So, even if the United States Trustee could find a basis for recovering an *authorized* transfer, it would not become property of the estate until after it was recovered.

The United States Trustee seems to have missed the point in *Hyman.*  He argues vociferously that because Larkin's fees were not approved they need to be returned.  In this regard, the United States Trustee is confusing "allowed" with "approved."  While the fees were not allowed until now, the payments were authorized[3].

At the risk of being redundant I will repeat what should have been clear in *Hyman*: there is no statutory provision requiring the return of a retainer in an administratively insolvent case that was converted from chapter 11 to chapter 7.  Section 726 does not provide for collection of property of the estate, as it lacks the words "avoid," "disgorge" and "turnover."  Section 549 is the primary provision for recovering transfers made post-petition.  It does not allow for recovery of payments that are authorized by the court or the Bankruptcy Code.  In this case, the payments were authorized by my February 2, 2010 order.  Finally, § 330(a)(5) explicitly provides for disgorgement of fees if the interim compensation awarded exceeds the actual final award of fees. This section speaks directly to disgorgement of professional fees but it is silent as to the reduction or return of fees if the case is converted and the estate is administratively insolvent. There has been no allegation that the $25,000 paid to Larkin exceeds the reasonable value of its total services.

---

[3] I agree with the United States Trustee on one point.  Any attorney utilizing the procedure discussed here must eventually file a fee application to have those fees allowed so the court can determine whether the amount paid exceeds the reasonable value of its services.  *See* 11 U.S.C. § 330(a)(5).

Finally, contrary to the arguments of the United States Trustee and the trustee, the return of the retainer will not ensure fairness. Larkin argues that if the United States Trustee and trustee are successful it would make it even more difficult to find attorneys willing to represent chapter 11 debtors. This argument is not theoretical. Chapter 11 debtor's attorneys often suffer financial losses as a consequence of their position within the bankruptcy case. To unwind the chapter 11 process and require that fees be returned would only serve to further deprive them of the small fraction of fees that they have rightfully earned and been paid.

ORDER

IT IS ORDERED THAT:

1. Larkin Hoffman Daly & Lindgren, Ltd. is awarded fees in the total amount of $160,575.50.
2. Larkin Hoffman Daly & Lindgren, Ltd. is awarded costs in the total amount of $5,869.87.
3. The unpaid balance of $141,445.37 is allowed as a chapter 11 administrative expense.

/e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE